[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendant, Aetna Life Casualty Company and Farmington Casualty Company (Aetna), has moved for summary judgment in this action on the ground that the plaintiff failed to meet his contractual obligation of submitting to an examination under oath as required in a fire insurance policy.
In their complaint the plaintiffs, Giuseppe and Tina Cappello, state that Aetna failed to pay a claim concerning the loss of plaintiffs' pizza restaurant in Windsor, Connecticut due to a fire on November 28, 1991. The Cappellos did not ask the court to direct Aetna to pay the claim. Rather, the Cappellos sought declaratory judgment adjudicating CT Page 3447 the rights and obligations of the parties. In addition, the Cappellos asked the court to enjoin Aetna from requiring Giuseppe Cappello to submit to an examination under oath.
Mr. Cappello alleges that submitting to an examination under oath per Aetna's policy provisions would constitute a potential violation of his federal and state constitutional rights against self-incrimination. Cappello is presently being prosecuted for Arson in the First Degree.
In response to Cappello's claims, Aetna filed this motion for summary judgment alleging that no genuine issue of material fact exists. Aetna claims that since the plaintiffs have failed to submit to an examination[1] under oath as required by the fire insurance policy, the plaintiffs have failed to meet their contractual obligations, thus entitling Aetna to judgment as a matter of law.
The issue before the court is whether Cappello's privilege against self-incrimination suspends or entirely excuses his contractual obligations under the insurance policy. This court answers that question in the negative based on case law from various jurisdictions and applying traditional contract theories.
The relevant portion of the Aetna policy provides:
SECTION VIII — COMMERCIAL PROPERTY CONDITIONS
E. DUTIES IN EVEN OF LOSS OR DAMAGE
 You must see that the following are done in the event of loss or damage to Covered Property.
 7. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.
Cappello does not deny that this provision is part of the policy. However, he claims that since he is not suing to CT Page 3448 collect proceeds or other monetary damages, there would be no harm to Aetna if Cappello submits to an examination under oath after the disposition of his criminal trial, which he has indicated he would be willing to do. Unfortunately for the plaintiff, there is no case law supporting a court's right to suspend a party's responsibilities to a contract when there is no traditional means of doing so. In the case at bar, the fire insurance policy is a private contract between parties that is subject to the same rules as any other contract.
Cappello's second claim is that the policy does not provide for any specific time frame in which the examination under oath needs to be completed. Thus, postponing the fulfillment of the requirement would not be especially burdensome. However, Connecticut General Statute 38a-307
(1990) provides a standard form for fire insurance policies in the state of Connecticut which Aetna has implemented in its policy. The statute further provides that within 60 days of the fire, the insured party should submit a proof of loss statement unless the time is extended by the insurance company. Then the loss is payable within 60 days after proof of loss. It is clear that the legislature planned for expedient resolution of these types of claims.
The Connecticut Supreme Court, in deciding a case involving the Connecticut Unfair Insurance Practices Act, stated: "In an action on the policy, the insurer's duty to comply with the policy provisions arises from a private insurance agreement and is contractual in nature. Lees v. Middlesex Insurance Company, 219 Conn. 644, 653, 594 A.2d 952
(1990). By analogy, the same can be said of the Cappellos. Indeed, the Connecticut Supreme Court stated: "If the insured failed to comply with the conditions of the policy essential to establish liability under it, or if after such liability arose he either failed to fulfill the terms of the policy relating to the adjustment of the loss or by other conduct extinguished liability in whole or in part, the plaintiff's right of recovery would be precluded accordingly." Pavano v. Western National Insurance Company, 139 Conn. 645, 650,96 A.2d 470 (1953). Pavano involved an examination under oath. The only difference was whether the plaintiff, who did not submit to the examination because he already took part in a similar examination under oath for proof of loss, actually had fulfilled the requirement. CT Page 3449
Other jurisdictions have decided that the insured's privilege against self-incrimination does not excuse his obligation to submit to an examination under oath. In Kisting v. Westchester Fire Insurance Company, 290 F. Sup. 141
(1968), the court granted the defendant fire insurance company's motion for summary judgment. Based on a similarly worded provision as that in the policy between the parties here, the Kisting court held: "It is well settled in other jurisdictions that noncompliance with a provision in an insurance policy requiring the insured to submit to an examination under oath precludes recovery by the insured." Id. at 147. Kisting submitted to the examination but refused to answer certain questions claiming the privilege against self-incrimination. The court pointed out that allowing the plaintiff to use this privilege in the circumstances of a contract would allow the plaintiff to "utilize the privilege not only as a shield, but also as a sword." Id. at 148. It further stated, "A plaintiff in a civil action who exercised his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have its complaint dismissed upon timely motion." Id. Cappello, in refusing to submit to the examination, has in essence refused to answer pertinent questions.
In a similar case, a Georgia circuit court affirmed the lower court which granted summary judgment for a defendant insurance company. Again, the facts and policy provisions were quite similar to the case at bar. The policy provided that in case of a loss to which the insurance may apply, the insured shall, as often as the insurer reasonably requires, "submit to an examination under oath and subscribe the same." Pervis v. State Farm Fire Casualty Company, 901 F.2d 944,946 (1990). The court in Pervis held: "[It] is clear that the plaintiff's refusal to submit to the requested examination under oath constitutes a breach of the insurance contract. . . ." Id. The court went on to say, "[the] fifth amendment privilege against self-incrimination does not in this case excuse appellant from fulfilling his contractual obligation . . . He must be held to the express terms of the agreement. He is not compelled to incriminate himself. He is, however, bound by the provisions to which he stipulated when he signed the insurance agreement." Id. The Pervis court stated that the privilege against self-incrimination preserves the insured's right to choose between incriminating himself or violating the policy provisions. Cappello has chosen to CT Page 3450 invoke the privilege but lose on his contract claim.
One last noteworthy case comes from Mississippi and involved a plaintiff who, instead of seeking monetary damages, sought a declaratory judgment that she not be required to submit to an examination under oath for insurance reasons as she subsequently had been charged with arson. The court ruled that the plaintiff's indictment did not work to relieve her of her contractual obligations, the failure to submit to the examination under oath was not legally excused, and "Constitutional immunity has no application to a private examination arising out of a contractual relationship" especially when the proceeding is extrajudicial. Saucier v. U.S. Fidelity and Guaranty Co., 765 F. Sup. 334, 336 (1991). Since Cappello's situation is exactly the same as that of the plaintiff in Saucier, this court concludes that a similar disposition of his case is legally supported.
For the reasons set forth above, summary judgment may enter in favor of defendants Aetna Life Casualty Company and Farmington Casualty Company.
By The Court Aurigemma, J.